**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

CHRISTIAN BAKSH, by his mother and
guardian, Debbie Macika,

     Plaintiff,

v.

LIVINGSTON COUNTY COMMUNITY
MENTAL HEALTH; CONNIE CONKLIN,
in her individual capacity; and JOHN DOES 1-x,

     Defendants.

_____/

No.

Hon.

Hon.

# **COMPLAINT**

1

Plaintiff alleges:

## PRELIMINARY STATEMENT

1. This is an action to redress Defendants' violations of Mr. Baksh's statutory and constitutional right to continued benefits pending the outcome of his Medicaid Fair Hearing.

2. Mr. Baksh is a severely disabled adult receiving medically necessary Community Living Support ("CLS") services through Livingston County Community Mental Health ("LCCMH"). These services allow him to avoid institutionalization.

3. LCCMH has a long history of failing to provide CLS to Mr. Baksh. For purposes of the present case, LCCMH caused Mr. Baksh's CLS hours to be reduced by over 50%.

4. After initially failing to provide an adverse benefit determination, LCCMH provided the adverse benefit determination ("the Notice") attached in relevant part hereto as Exhibit 1.

5. The Notice was mailed on April 1, 2024. It asserted that Mr. Baksh's current CLS services would be "reduced," effective April 12, 2024, because LCCMH "does not have provider capacity to provide the service." Ex. 1. The "legal basis for the decision," according to the notice, was 42 C.F.R. § 438.400(b), which simply defines adverse benefit

determinations as, in part, "the reduction, suspension, or termination of a previously authorized service."

6. The Notice did not cite any statutory or regulatory section requiring the reduction, as required by the Constitution and federal regulations. As LCCMH is well aware, "provider capacity" is *not* a permissible basis to reduce services.

7. The Notice, as it was required to do under federal law, advised Mr. Baksh of his right to request a hearing and to receive "the same level of services" during the pendency of his appeal.

8. But when Mr. Baksh timely requested a hearing on April 9, 2024, LCCMH did not continue his prior level of services.

9. Plaintiff accordingly brings this action pursuant to 42 U.S.C. § 1983 based on the violation of his right to continued benefits pending a hearing, as expressly conferred by the Social Security Act and the United States Constitution.

**JURISDICTION AND VENUE**

10. This Court has jurisdiction over Plaintiff's federal and constitutional claims under 28 U.S.C. § 1331.

11. Venue in the Eastern District is proper because Plaintiff resides in Livingston County, Michigan, and because all the events complained of

3

herein occurred in Livingston County, Michigan. Livingston County is in the Eastern District of Michigan.

## PARTIES

12. Plaintiff Christian Baksh is a resident of Livingston County, Michigan and a Medicaid recipient. He is 24 years old and has been diagnosed with multiple disabilities, including cerebral palsy, an intellectual disability, and speech impairments. He is quadriplegic and cannot talk.

13. Mr. Baksh receives medically necessary Medicaid-funded CLS services to continue living in his community and avoid institutionalization.

14. Mr. Baksh's mother and guardian is suing on his behalf pursuant to Fed. R. Civ. P. 17(c)(1)(A).

15. Defendant LCCMH is a community mental health services program created pursuant to Michigan's Mental Health Code. It is a local governmental body that provides behavioral and mental health services to Livingston County adults with a severe and persistent mental illness, children with a severe emotional disturbance, and individuals with a developmental disability.

16. LCCMH, through its supervising prepaid inpatient health plan, is a contractual agent of the Michigan Department of Health and Human Services ("MDHHS"), the single state Medicaid agency responsible for

4

administering the Medicaid program in Michigan. 42 U.S.C. § 1396a(a)(5).

17. LCCMH stands in the shoes of MDHHS when it provides or denies Medicaid services to beneficiaries in its service region. *Wiesner v. Washtenaw County Community Mental Health*, 340 Mich. App. 572, 583 (2022).

18. Connie Conklin is the director of LCCMH and is being sued in her individual capacity.

19. John Does 1-x are the LCCMH employees (or a single LCCMH employee) directly responsible for processing Mr. Baksh's hearing request and ensuring that Mr. Baksh received continued benefits pending his hearing.

## FACTS

### A. Background: The Medicaid Program

20. The Medicaid program is jointly funded and administered by the state and federal governments under Title XIX of the Social Security Act.

21. The Medicaid Act creates a "cooperative federal-state program," through which states that elect to participate receive federal financial assistance to pay for the medical treatment of specific groups of needy individuals.

22. The Medicaid program provides medical assistance for certain low-income children, families, pregnant women, disabled adults, and elderly people.

23. Michigan must operate its Medicaid program in compliance with federal Medicaid statutes and regulations.

24. To receive federal funding, states must first formulate a plan that meets federal requirements (the "State Plan").

25. The State Plan specifies the nature and scope of each state's Medicaid program and must be submitted for approval to the federal Centers for Medicare and Medicaid Services ("CMS"). 42 U.S.C. § 1396a(a); 42 C.F.R. § 430.10.

26. Federal law requires that each State Plan "provide for the establishment or designation of a single State agency to administer or to supervise the administration of" the Plan. 42 U.S.C. § 1396a(a)(5); *see* 42 C.F.R. § 431.10(b)(1). In Michigan, MDHHS is that "single state agency."

27. A state's plan must provide coverage to seven designated classes of needy individuals, termed "categorically needy," for at least seven specific kinds of medical care or services. *See* 42 U.S.C. §§ 1396a(a)(10)(A)(i), 1396d(a). States may extend this coverage to other populations.

6

28.  CMS grants waivers to "permit states to offer, under a waiver of statutory requirements, an array of home and community-based services that an individual needs to avoid institutionalization." 42 C.F.R. § 441.300.

29.  Michigan's Medicaid program includes the provision, under a waiver, of certain home and community-based services to approved Medicaid beneficiaries who would otherwise require services in an institution. This waiver is called the Habilitation Supports Waiver ("HSW").[1]

30.  Michigan has included CLS within its HSW services. CLS services "facilitate an individual's independence, productivity, and promote inclusion and participation." Michigan Medicaid Provider Manual ("MPM") § 15.1.

31.  Mr. Baksh receives CLS services under the HSW.

32.  Under waivers like the HSW, a state may forgo compliance with statewide, comparability, and certain community income and resource rules, but must otherwise comply with all other federal Medicaid

---

[1] Available at https://www.michigan.gov/mdhhs/-/media/Project/Websites/mdhhs/Folder2/Folder33/Folder1/Folder133/2010_HSW_Final_Renewal_Application-10-1-2010.pdf?rev=37d7ceafc44d4e83a7b49bbfc2f845ac&hash=C6A3496AADE4A54A9ADB835C0FC540B7.

7

requirements, including due process requirements. *See* 42 U.S.C. § 1396n(c)(3).

33. MDHHS contracts with the Community Mental Health Partnership of Southeast Michigan ("CMHPSM"), a prepaid inpatient health plan, to provide or arrange for Medicaid services for enrollees in CMHPSM's region.

34. CMHPSM, in turn, contracts with LCCMH, an organization statutorily and contractually required to provide Medicaid services to eligible individuals with disabilities in Livingston County.

35. LCCMH is obligated under state and federal law to provide medically necessary Medicaid services to eligible individuals with reasonable promptness.

36. LCCMH is further obligated to do so by CMHPSM's contract with MDHHS.[2]

37. There is no state-set CLS rate, and each CMH retains the ultimate authority to approve its own rates. Ex. 2, Deposition Testimony of James Colaianne in *Waskul v. Washtenaw County Community Mental Health*, No. 16-10936.

---

[2] CMHPSM has delegated these service provision obligations to LCCMH.

38. In accordance with their obligation to provide medically necessary services, Medicaid managed care entities such as LCCMH must maintain a provider network "sufficient to provide adequate access to all services covered under the contract," and must, "if the provider network is unable to provide necessary services, . . . adequately and timely cover these services out of network for the enrollee, for as long as the . . . provider network is unable to provide them." 42 C.F.R. § 438.206(b)(1) and (4).

39. Defendant LCCMH is responsible for arranging for providers to provide the CLS services in Mr. Baksh's individual plan of service.

40. At all relevant times, LCCMH has received per-member-per-month capitation payments intended to cover the anticipated cost of providing Mr. Baksh with all medically necessary services.

**B. <u>Statutory and Constitutional Due Process</u>**

41. The right to procedural due process is secured by the 14th Amendment, and public benefits such as Medicaid are a constitutionally protected property interest. *See Goldberg v. Kelly*, 397 U.S. 254, 262 (1970).

42. Under *Goldberg*, Medicaid entities must provide a meaningful notice stating the basis for actions they intend to take and, when coverage is to be reduced or terminated, a pre-action notice informing the

beneficiary of the right to continue benefits pending a final administrative decision.

43. The notice must include "citation to the specific statutory section requiring reduction or termination." *Barry v. Lyon*, 834 F.3d 706, 719 (6th Cir. 2016).

44. Additionally, the Medicaid Act requires that a "State plan for medical assistance must . . . provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or not acted upon with reasonable promptness." 42 U.S.C. § 1396a(a)(3).

45. Federal regulations found at 42 C.F.R. §§ 431.200 *et seq.* implement 42 U.S.C. § 1396a(a)(3). 42 C.F.R. § 431.200(a). Certain applicable managed care regulations, found at 42 C.F.R. § 438.420, likewise implement 42 U.S.C. § 1396a(a)(3). 42 C.F.R. § 438.400(a)(1).

46. Under federal regulations consistent with the constitutional notice standard, Medicaid entities must, in their notices, provide the "specific regulations that support, or the change in Federal or State law that requires, the action." 42 C.F.R. § 431.210(c).

47. Under the federal regulations, if the agency sends an advance action notice and the beneficiary requests a hearing before the date of action,

"the agency may not terminate or reduce services until a decision is rendered after the hearing." 42 C.F.R. § 431.230(a).

48. Likewise, pursuant to 42 C.F.R. § 438.420, managed care entities such as LCCMH "must continue the enrollee's benefits if all of the following occur":

   a. The enrollee files the request for an appeal timely in accordance with § 438.402(c)(1)(ii) and (c)(2)(ii);

   b. The appeal involves the termination, suspension, or reduction of previously authorized services;

   c. The services were ordered by an authorized provider;

   d. The period covered by the original authorization has not expired; and

   e. The enrollee timely files for continuation of benefits.

49. Medicaid participants' hearing rights under *Goldberg* are codified at 42 C.F.R. § 431.205(d): "The hearing system must meet the due process standards set forth in *Goldberg v. Kelly*, 397 U.S. 254 (1970), and any additional standards specified in this subpart."

50. Furthermore, the hearing system "must comply with the United States Constitution." 42 C.F.R. § 431.205(f).

51.    Of all the due process rights associated with public benefits, the right to pre-termination/reduction notice and continued benefits is perhaps the most known and best established, having existed since the United State Supreme Court's landmark decision in *Goldberg v. Kelly*, 397 U.S. 254 (1970).

## C. **Plaintiff's Facts**

### *Background*

52.    Plaintiff Baksh is 24 years old and has been diagnosed with multiple disabilities, including cerebral palsy, an intellectual disability, and speech impairments. He is quadriplegic and cannot talk.

53.    At least as early as June 2021, LCCMH authorized Mr. Baksh to receive 31 hours of home and community-based services[3] per week.

54.    Mr. Baksh, however, did not receive a single hour of those authorized services for over a year, until an administrative law judge ordered LCCMH to provide the services and Mr. Baksh filed a mandamus action in state court to enforce the judge's decision (*see* below).

55.    Nor was this the first time that LCCMH had failed to provide services. Due to LCCMH's ongoing failure as early as 2019 to provide services,

---

[3] These services were CLS (25 hours) and respite (6 hours). The respite in Mr. Baksh's plan has since been replaced with CLS, such that CLS is the only service at issue in this case.

Mr. Baksh filed a lawsuit in this Court (2:19-cv-13672), which settled for damages.

56.     Connie Conklin, director of LCCMH, was a named defendant in that lawsuit.

*Medicaid Fair Hearing*

57.     Because he did not receive services after they were authorized in June 2021, Mr. Baksh requested a Medicaid Fair Hearing in March 2022. The basis for the hearing was LCCMH's "failure to provide services in a timely manner, as defined by the State."[4] 42 C.F.R. § 438.400(b)(4).

58.     As part of the hearing process, LCCMH stipulated that the services at issue were medically necessary and had not been provided. *C.B. v. LCCMH*, -- Mich. App. -- ; 2023 WL 8482984, at *2 (2023).

59.     There was "no dispute about LCCMH's intended function or that it was the provider responsible for providing Mr. Baksh with services for his disabilities." *Id*.

*Fair Hearing Decision*

60.     On July 8, 2022, an administrative law judge ("ALJ"), acting pursuant to authority delegated by MDHHS, ordered LCCMH to "provide the

---

[4] Michigan defines "timely" as within 14 calendar days of the start date agreed upon during the person-centered planning meeting and as authorized by the Medicaid entity.

13

approved, medically necessary CLS and respite care services in accordance with the applicable law and policy." Ex. 3.

61. In reaching his decision, ALJ Kibit expressly rejected LCCMH's contention that, "absent a showing that Respondent failed to exercise diligence in providing services, Petitioner cannot state a claim or prove by a preponderance that Respondent failed to provide the services." Ex. 3, p 3.

62. ALJ Kibit wrote that Mr. Baksh had identified "at least two specific alternatives that Respondent could have, but did not, pursue to provide the approved services: (1) paying an enhanced rate to attract providers, or (2) using CMH staff to provide services." *Id.*

63. After the decision, "LCCMH was required to provide the services as promptly and expeditiously as possible, but not later than 72 hours after the order." *C.B.*, 2023 WL 8482984, at *2.

### *Mandamus Action*

64. When LCCMH did not provide the services that ALJ Kibit ordered within 72 hours, Mr. Baksh filed a mandamus action to enforce ALJ Kibit's decision.

65. While the mandamus action was pending, LCCMH finally began providing the services in Mr. Baksh's individual plan of service.

14

66. With LCCMH at last providing the services in full, the Michigan Court of Appeals determined, per Mr. Baksh's suggestion, that Mr. Baksh's request for the mandamus writ was moot, but it remanded the case to the trial court for a determination of damages.

67. LCCMH and Mr. Baksh subsequently settled the damages claim in February 2024.

68. Director Conklin signed the settlement agreement, which required board approval.

***The Present Reduction in Services***

69. In Mr. Baksh's current plan of service, LCCMH has determined that roughly 36 hours of CLS per week (33 hours when Mr. Baksh is in school and 63 hours during school breaks) are medically necessary for Mr. Baksh.

70. Mr. Baksh was receiving the full number of authorized hours when his current plan of service began on July 1, 2023, and he continued to receive the full number of hours in February 2024.

71. During March 2024, however, Mr. Baksh received less than 50% of the authorized CLS services in his plan of service.

72. Despite being authorized for 178 hours of CLS services in March 2024, Mr. Baksh received only 84 of those CLS hours.

73. Mr. Baksh has so far received less than 50% of his authorized hours in April.

74. Mr. Baksh's representative demanded that LCCMH issue an adverse benefit determination notice on April 1, 2024, and LCCMH issued its Notice the same day. Ex. 1.

75. In the Notice, LCCMH accurately characterized its failure to provide over 50% of Mr. Baksh's CLS hours as a "reduction." Ex. 1.

76. LCCMH's asserted basis for the reduction was solely that it "does not have provider capacity to provide the service(s)." *Id.*

77. In other words, LCCMH's only justification for reducing Mr. Baksh's CLS hours was the one that ALJ Kibit had already expressly rejected in the 2022 Medicaid Fair Hearing.

78. Although LCCMH was required to provide a "citation to the specific statutory section requiring reduction," LCCMH did not do so.

79. Instead, LCCMH simply cited, in part, the definition of "adverse benefit determination." *Id.*

80. As its own Notice stated, LCCMH was also required, in the event of a timely (within 10 days) hearing request, to ensure that Mr. Baksh "continue[d] to receive [his] same level of services" during the pendency of his appeal. *Id.*

16

81.    Mr. Baksh timely requested a hearing on April 9, 2024.

82.    In his hearing request, he wrote: "Christian Baksh hereby appeals the CLS reduction set forth in the attached notice. In accordance with federal law, Mr. Baksh requests a continuation of his prior level of benefits (*i.e.*, provision of the full number of CLS hours in his IPOS, which he was receiving prior to this reduction) pending the hearing. Please confirm continuation of benefits within 72 hours." Ex. 4.

83.    But despite Mr. Baksh's indisputably timely hearing request and explicit demand for continued benefits, LCCMH failed to restore Mr. Baksh's prior level of benefits pending his hearing.

### *Pattern/Practice of Failing to Provide Services*

84.    LCCMH has for years engaged in a persistent and pervasive practice of violating Medicaid beneficiaries' rights by failing to provide medically necessary services.

85.    In one recent case, LCCMH refused to authorize medically necessary CLS on the basis that "there are no available CLS staff," acting directly contrary to the mandate of the MDHHS guidance attached hereto as Ex. 5.

a. In that guidance, MDHHS reinforced that entities such as LCCMH "cannot delay the approval or denial of a service request based upon the availability of providers." Ex. 5.

b. In the same guidance, MDHHS emphasized that beneficiaries "are entitled to 'Due Process' whenever their Medicaid benefits are . . . reduced," which includes "continued benefits pending a final decision." *Id*.

86. Upon information and belief, LCCMH routinely "defers" authorization of medically necessary Medicaid services for this improper reason.

87. LCCMH's practice of failing to provide services has violated Mr. Baksh's rights for at least five years, and it is the driving force behind the due process violation at issue here.

88. When ALJ Kibit, acting on behalf of MDHHS, ordered LCCMH to provide services to Mr. Baksh in July 2022, LCCMH refused to implement the order.

89. LCCMH's refusal to implement ALJ Kibit's order violated 42 U.S.C. § 1396a(a)(3) and its implementing regulation requiring effectuation of the hearing decision within 72 hours.

90. After settling the mandamus action, LCCMH almost immediately began failing to provide services again.

91. As described above, LCCMH's only justification in the Notice for reducing Mr. Baksh's service was the same justification that ALJ Kibit had already expressly rejected in the 2022 Medicaid Fair Hearing.

92. All Defendants have actual knowledge of their duty to continue Mr. Baksh's prior level of benefits pending his hearing, and the right to benefits pending is one of the most firmly established and well-defined rights in Medicaid and public benefits generally.

93. All Defendants, specifically including Defendant Conklin and the Doe Defendant(s), have actual knowledge of LCCMH's failure to provide the required continued benefits.

94. Defendants are refusing to provide continued benefits with callous and reckless indifference to the needs of Mr. Baksh and the harm that will result from not providing continued benefits.

95. LCCMH has actual knowledge of the deleterious effect on Mr. Baksh of not receiving CLS services, having determined itself that these services are "medically necessary."

96. Within the last two years, LCCMH was served with a verified mandamus complaint detailing the harm that Mr. Baksh suffered due to LCCMH's failure to provide services.

97.   In the verified complaint, Mr. Baksh's mother detailed the isolation, loss of relationships, increase in behavioral issues, increased need for medication with harmful side effects, and deterioration of skills suffered as a result of LCCMH's failure to provide services.

98.   The pattern and practice of violating Mr. Baksh's right to receive medically necessary Medicaid services comes from the top down.

99.   LCCMH's director, Defendant Connie Conklin, has had actual knowledge for at least 3.5 years of LCCMH's failure to provide services to Mr. Baksh.

100.  Director Conklin, in her official capacity, was a named defendant in a 2019 federal court action challenging LCCMH's failure to provide services to Mr. Baksh, and she personally attended at least one of the 2022 show cause hearings in the mandamus action.

101.  ALJ Kibit's 2022 decision and order was sent directly to Director Conklin. Ex. 3, p 10.

102.  Director Conklin, as LCCMH's final decision maker, has ratified, or at the very least knowingly acquiesced in, LCCMH's ongoing practice of failing to provide medically necessary services.

103. Director Conklin ratified, or at the very least knowingly acquiesced in, LCCMH's refusal to implement ALJ Kibit's 2022 order requiring LCCMH to provide services to Mr. Baksh.

104. Director Conklin has authorized, or at the very least knowingly acquiesced in, LCCMH's failure to provide continued benefits pending Mr. Baksh's Medicaid Fair Hearing.

105. Given LCCMH's very recent litigation with Mr. Baksh, it is inconceivable that Director Conklin was not called upon to personally approve LCCMH's decision to not provide benefits pending.

106. Director Conklin had the authority, and knew that she had the authority, to take action (including authorizing an increase in Mr. Baksh's CLS rate or authorizing LCCMH's own staff to provide CLS services) to ensure that Mr. Baksh received continued services pending his hearing, but she failed to take action.

107. Director Conklin's failure to do so was willful and in callous disregard of rights she knew Mr. Baksh had.

108. Her failure to do so was a direct cause of Mr. Baksh not receiving benefits pending his hearing.

109. The John Doe defendants, as the individuals directly responsible for processing Mr. Baksh's hearing request and ensuring that Mr. Baksh

received continued benefits pending his hearing, knowingly and willingly violated Mr. Baksh's clearly established constitutional and statutory rights when they failed or refused to provide continued benefits.

110.  The Doe Defendants' failure to ensure that Mr. Baksh received continued benefits pending his hearing directly harmed, and continues to directly harm, Mr. Baksh.

## CLAIMS FOR RELIEF

### COUNT I – VIOLATION OF CONSTITUTIONAL RIGHT TO CONTINUED BENEFITS (all Defendants)

111.  Plaintiff incorporates all paragraphs above.

112.  LCCMH, as its Notice acknowledges, reduced Mr. Baksh's medically necessary CLS services.

113.  Because Mr. Baksh timely requested a hearing, he was entitled to continued benefits pending his hearing.

114.  Despite timely submitting his hearing request, meeting all regulatory requirements for benefits pending, and expressly requesting benefits pending, Defendants failed to restore Mr. Baksh's prior level of benefits pending his hearing.

115.  By failing to provide constitutionally required continued benefits pending the hearing, Defendants violated Mr. Baksh's constitutional right to

due process, a right secured by the 5th and 14th Amendments and enforceable by Plaintiff pursuant to 42 U.S.C. § 1983.

116. Defendants' actions or omissions, under color of state law, have harmed Mr. Baksh by depriving him of his constitutional due process right to receive continued medically necessary services pending his hearing.

## COUNT II – VIOLATION OF STATUTORY RIGHT TO CONTINUED BENEFITS (all Defendants)

117. Plaintiff incorporates all paragraphs above.

118. LCCMH, as its Notice acknowledges, reduced Mr. Baksh's medically necessary CLS services.

119. This reduction in services entitled Mr. Baksh to advance notice and to maintain his prior level of services pending his hearing. 42 C.F.R. §§ 431.211 and 431.230; 42 C.F.R. § 438.420.

120. By failing to restore Mr. Baksh's prior level of benefits pending his hearing, Defendants violated Mr. Baksh's statutory right to benefits pending a hearing.

121. Defendants' violation of Mr. Baksh's constitutional due process right to benefits pending also violated his statutory right to a fair hearing. 42 C.F.R. § 431.205(d) and (f).

23

122. Defendants have, under color of state law, violated Mr. Baksh's clearly established rights under 42 U.S.C. § 1396a(a)(3), rights enforceable pursuant to 42 U.S.C. § 1983.

## RELIEF REQUESTED

A. Assume jurisdiction in this case;

B. Declare unlawful Defendants' failure to provide continued benefits pending Mr. Baksh's hearing;

C. Preliminarily and permanently enjoin LCCMH from failing to continue Mr. Baksh's prior level of services pending his administrative hearing;

D. Award compensatory damages against LCCMH;

E. Award compensatory and punitive damages against Defendant Conklin and the Does Defendants;

F. Assume continuing jurisdiction as may be necessary to monitor and enforce any relief granted;

G. Award Plaintiff costs and reasonable attorney fees as provided by law; and

H. Grant such other relief as is just and proper.

Respectfully submitted,


/s/ Nicholas A. Gable (P79069)
John A. Sloat (P75933)
DISABILITY RIGHTS MICHIGAN
Attorneys for Plaintiff
4095 Legacy Parkway
Lansing, MI  48911
(517) 374-4671
ngable@drmich.org


April 16, 2024

## DEMAND FOR JURY

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a jury trial on all

issues triable by a jury.

/s/ Nicholas A. Gable (P79069)
DISABILITY RIGHTS MICHIGAN
Attorney for Plaintiff
4095 Legacy Parkway
Lansing, MI  48911
(517) 374-4671
ngable@drmich.org


April 16, 2024